IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MITCHELL LARKINS,

    *Plaintiff*,

v.                                        Case No.: 4:23cv307-MW/MAF

BUDDY MONEY, in his official
capacity as Sheriff of Liberty County,
Florida,

    *Defendant*.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

    This is an employment case. Plaintiff worked as a dispatcher for the Liberty County Sheriff's Office between August 2019 and May 2022. Plaintiff's employment for Defendant ended in May 2022 when he resigned from his position after receiving multiple written reprimands from his immediate supervisor. Plaintiff asserts he was constructively discharged due to the harassment he faced on account of his age and gender. Plaintiff also asserts Defendant retaliated against him because he reported mismanagement, misfeasance or malfeasance. He brings claims for age discrimination under the ADEA, sex discrimination under Title VII, and public whistleblower retaliation under Florida's public whistleblower statute. *See* ECF No. 8-16 (amended complaint).

On September 16, 2024, this Court held a telephonic hearing on Defendant's motion for summary judgment, ECF No. 26. This Court has considered the motion, Plaintiff's response, ECF No. 38, and Defendant's reply, ECF No. 41, along with the arguments raised at the hearing. For the reasons that follow, Defendant's motion, ECF No. 26, is due to be granted as to the federal claims and denied as to the remaining state-law claim.

I

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts are "material" with respect to the substantive law if they form disputes that are not "irrelevant or unnecessary" and have the potential to "affect the outcome of the suit." *Id*. The parties' legal arguments are not facts, and this Court is not required to accept as true the nonmovant's factual characterizations and legal arguments. *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994) (distinguishing between facts and legal arguments and holding that "[courts] are [not] constrained to accept all the nonmovant's factual characterizations and legal arguments [made in response to a motion for summary judgment].").

A moving party is entitled to summary judgment when the nonmoving party fails to prove an essential element of its case, an element for which the nonmoving party has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This Court accepts the facts in the light most favorable to the nonmovant. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008). All reasonable doubts about the facts are resolved in the nonmovant's favor. *Id.* at 1241. This Court, however, may consider relevant facts undisputed if the nonmovant fails to properly address the movant's assertions. Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

II

Accepted in the light most favorable to Plaintiff, the facts are these. Plaintiff began working for Defendant in 2019. He was originally supervised by Dan Faircloth. In March 2021, Defendant hired Peggy Moore as a dispatcher and assistant finance director. As assistant finance director, Ms. Moore held HR responsibilities for Defendant. After she started working for Defendant, Ms. Moore regularly referred to Plaintiff as "old man." ECF No. 37-26 ¶ 10.

Sometime after hiring Ms. Moore, Defendant changed the overtime policy for *all* employees. Instead of paying overtime hours, Defendant granted employees

compensatory leave time. Employees were not informed of this change before it took effect.

Because Plaintiff could no longer make ends meet without earning overtime, he took a part-time job working as a dispatcher for the Blountstown Police Department around May 2021. *See* ECF No. 37-27 at 70 (Plaintiff testified that he took job with Blountstown PD "about a year before [he] resigned"). His job as dispatcher for Defendant's office remained his "primary job," and Blountstown PD was aware of this. *Id*. Ms. Moore initially arranged his schedule to allow him to work this second job, although after "a couple of weeks," Ms. Moore would constantly change his schedule making it difficult for him to know when he could work extra hours at his part-time job with Blountstown PD. ECF No. 37-26 ¶ 7.

After Defendant changed his office's overtime policy for all employees, Plaintiff began opposing the new leave policy and asking for audits because his compensatory time was not reflected in his timesheets. In January 2022, Defendant informed Plaintiff that he had zero compensatory time because he had used it all, even though Ms. Moore had him take only five days off in December 2021 after informing him that he had over 114 hours of compensatory time.

In February 2022, Dan Faircloth resigned, and Ms. Moore became Plaintiff's direct supervisor. Defendant promoted Ms. Moore to the supervisory position without posting a vacant position or accepting applications for the position. Plaintiff

4

was denied training to learn new tasks prior to Mr. Faircloth's departure that would have made him a qualified candidate for the supervisory position to which Defendant promoted Ms. Moore. During the time Ms. Moore was Plaintiff's direct supervisor, he was the only male dispatcher and was also the oldest dispatcher working for Defendant.

After Ms. Moore became Plaintiff's direct supervisor, she continued changing Plaintiff's schedule around in a way that prevented him from working his part-time job with Blountstown PD. She did not similarly change the other younger, female dispatchers' schedules this way. In February 2022, Plaintiff also requested leave to attend a wedding, but the request was denied after Ms. Moore had previously assured him that he would be able to take leave.

Around this time, Plaintiff sent a letter to Defendant and Ms. Moore, in which he reported that his schedule was being intentionally manipulated to bar him from working his part-time job, and that Defendant had failed to calculate his overtime pay or compensatory time for the hours he had worked. Defendant did not respond to the letter, and Plaintiff followed up by verbally reporting to Defendant that Ms. Moore was failing to adequately compensate him for overtime and intentionally altering his schedule, but Defendant did not investigate these complaints.

In early March 2022, Ms. Moore issued two Memos of Counseling for Plaintiff, asserting several issues with Plaintiff's job performance. Plaintiff disputes

most of the issues raised but admits that he did unknowingly violate procedure by shredding a report and he did violate the tobacco-use policy occasionally. Neither of these memos resulted in a decrease in pay or other benefits.

    Later in March, Plaintiff ran out of gas on his way to work and had to walk to work in the rain because Defendant would not allow his deputies to pick Plaintiff up and give him a ride. Mr. Faircloth—who no longer worked for Defendant—was able to eventually pick Plaintiff up and drive him to work, but by the time he got there, Ms. Moore had arrived to cover Plaintiff's shift and she sent him home for being late. Ms. Moore had not sent any other dispatchers home for being late to work. After this happened, Defendant visited Plaintiff's mother, who had been one of his teachers in school and with whom he discussed Plaintiff. This conversation left Plaintiff's mother concerned that Plaintiff would be fired.

    A few days after Plaintiff was sent home for being late to work, Defendant called Plaintiff into a meeting with him, Ms. Moore, and another dispatcher—Tiffany Cessna—to discuss what was going on between Ms. Moore and Plaintiff. Defendant had notified Plaintiff of the meeting ahead of time and Plaintiff prepared a list of complaints to bring to the meeting and to provide to Ms. Moore and Defendant. Following the meeting, Plaintiff requested to go on stress leave, and his request was granted.

After Plaintiff returned from stress leave, he wrote a "letter of complaint," dated May 2, 2022, and provided it to Defendant and others at the Sheriff's Office. The letter outlines several complaints concerning Ms. Moore's conduct and Defendant's leadership, including allegations that Ms. Moore was creating—and Defendant was permitting—a hostile work environment, and that Ms. Moore was discriminating against Plaintiff due to his age. ECF No. 28-6.

Shortly after Plaintiff provided this letter in May 2022, he received a written reprimand outlining additional performance issues. ECF No. 29-6. Plaintiff denied some of the issues raised in the reprimand but admitted he probably did continue to violate the no-tobacco policy. The reprimand did not result in a loss of pay or other benefits. Following this written reprimand, Plaintiff resigned on May 11, 2022.

III

Defendant moves for summary judgment on all three claims. As to the age and gender discrimination claims, Defendant argues that, among other deficiencies, the evidence in the light most favorable to Plaintiff fails to demonstrate that Plaintiff suffered an adverse employment action. As to the whistleblower claim, Defendant argues that Plaintiff cannot establish a *prima facie* case of whistleblower retaliation. This Court will address both arguments in turn, starting with the substantive discrimination claims.

A

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Likewise, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). For both claims, the ultimate inquiry at summary judgment is whether Plaintiff has come forward with evidence from which a reasonable factfinder could "infer intentional discrimination in an employment action." *Tynes v. Fla. Dep't of Juv. Justice*, 88 F. 4th 939, 946 (11th Cir. 2023) ("A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit.' " (quoting *Jenkins v. Nell*, 26 F. 4th 1243, 1250 (11th Cir. 2022)).

Here, Defendant's primary argument with respect to Counts II and III—Plaintiff's age and gender discrimination claims—is that no reasonable factfinder could find that Plaintiff suffered an adverse employment action. As to this point, Plaintiff conceded on the record at the hearing that the only adverse employment

action at issue is whether Plaintiff suffered a constructive discharge when he resigned in May 2022. Having considered the cited evidence and construing all reasonable inferences in the light most favorable to Plaintiff, this Court agrees with Defendant that no reasonable jury could find that Plaintiff suffered a constructive discharge from his job with Defendant in May 2022.

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (quoting *Munday v. Waste Mgmt. of North America, Inc.*, 126 F.3d 239, 244 (4th Cir. 1997)). The employee's subjective feelings about his employer's actions do not matter." *Byrd v. Gwinnett Cnty. Sch. Dist.*, --- F. Supp. 3d ---, at *31 (N.D. Ga. 2024).  Instead, "[a] plaintiff must show 'the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign.' " *Bryant*, 575 F.3d at 1298 (quoting *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994)).

"Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." *Bryant*, 575 F.3d at 1298; *see also Brantley v. City of Macon*, 390 F. Supp. 2d 1314, 1328 (M.D. Ga. 2005) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992) ("Thus, 'to prove constructive discharge, the plaintiff must demonstrate a greater severity or

9

pervasiveness of harassment than the minimum required to prove a hostile working environment.' "). For example, "vague nitpicking, 'targeting,' 'small things,' and frustration are not intolerable working conditions and could not support a jury finding of constructive discharge." *Milton v. Gray Media Grp., Inc.*, 635 F. Supp. 3d 1215, 1227–28 (N.D. Ala. 2022). Indeed, the Eleventh Circuit has found that a plaintiff failed to meet the high bar of establishing a constructive discharge even when they were the subject of ageist comments, written up for something that was not previously worthy of discipline, had an increased workload, and later forced to clock out after complaining about the increased workload. *Austin v. FL HUD Rosewood LLC*, 791 F. App'x 819, 825 (11th Cir. 2019).

Here, Plaintiff points to "false discipline, undue scrutiny, and [Ms.] Moore's discriminatory and retaliatory treatment of Plaintiff, the only male and oldest Dispatcher in Defendant's employment," as evidence supporting his claim that he was "forced" from his job. ECF No. 38 at 37. Plaintiff's evidence consists largely of a litany of complaints, slights, and nitpicking at the hands of his immediate supervisor. Ultimately, Plaintiff contends he was subject to differential treatment with respect to written reprimands, scheduling, discipline for being late, and opportunity for promotion, which caused him such severe stress that he needed to take stress leave and ultimately resign. Upon closer inspection, however, Plaintiff's

10

evidence allegedly supporting his constructive discharge fails to meet the high bar to create a jury question as to whether he suffered an adverse employment action.

For example, Plaintiff asserts he was subject to differential treatment insofar as he received written reprimands for conduct similar to what his younger, female coworkers did but were not disciplined for. Of course, written reprimands that do not lead to tangible harm in the form of lost pay or benefits do not constitute adverse employment actions. *Wallace v. Ga. Dep't of Transp.*, 212 F. App'x 799, 801 (11th Cir. 2006). Here, although Plaintiff received two Memos of Counseling and a written reprimand, none of these write ups led to tangible harm. Moreover, Plaintiff's coworker, Tiffany Cessna, testified that she saw Plaintiff "make mistakes over and over, and they just needed to be corrected," whereas other people made mistakes, but they "were addressed, and we corrected our mistakes." ECF No. 37-30 at 16. Although Plaintiff disputed several of the alleged violations included in his write-ups, he conceded that he did commit some of the cited violations, such as repeatedly violating Defendant's tobacco policy even after receiving a prior write-up for violating that policy. ECF No. 37-26 at 6, 9.

Plaintiff asserts another example of differential treatment occurred when Ms. Moore sent him home from work after he arrived about fifteen minutes late when he ran out of gas one night. But Ms. Moore's undisputed testimony indicates that she was woken up that night with a call from dispatch indicating that Plaintiff had

11

notified the Sheriff's Office that he would be four to five hours late to his shift. *See* ECF No. 37-31 at 17. Accordingly, Ms. Moore "instructed them that [she] would be on [her] way," to cover Plaintiff's shift, *id*. at 18, but Plaintiff ended up arriving much sooner than what she was told he had estimated earlier. Nonetheless, Ms. Moore sent Plaintiff home after she decided to cover Plaintiff's night shift. *Id*. at 19–20.

Plaintiff also argues that he was passed over for promotions even though he was the most senior dispatcher at the time. First, Plaintiff asserts Defendant denied training necessary to make him qualified for a promotion and then promoted Ms. Moore to be his supervisor without advertising the position. The only cited evidence that Plaintiff was denied training, however, is Plaintiff's conclusory assertion in his declaration and a single text exchange wherein Plaintiff offers to learn how to do a specific task to help Ms. Moore and his previous supervisor, Dan Faircloth, but Ms. Moore declined the offer due to limited capacity for users to do the task on the Sheriff's computer system. *See* ECF No. 38 at 5; ECF No. 37-16 at 7 ("The problem with teaching yall to add/remove from EForce is you have to have RMS in Eforce and don[']t have enough license for each user to get and deputy side has to have for doing reports[.]"). Plaintiff fails to identify any evidence disputing this reason—namely, not enough capacity on the Sheriff's computer system—or permitting a reasonable inference that the denial of training was intentionally discriminatory.

12

Plaintiff also suggests he was treated worse than his younger, female coworkers when "Defendant named [Tiffany] Cessna to be Assistant Communications Supervisor without informing the other Dispatchers." ECF No. 37-26 at 5. However, Plaintiff offers no additional evidence regarding the position Ms. Cessna received or whether Plaintiff was qualified for the position. Instead, he testified merely that "Tiffany, she got promoted to assistant communications supervisor, something like that. They made up some name for her or something like that, even though she had been there and quit two or three times." ECF No. 37-27 at 58–59. Ms. Moore testified that she was "not involved . . . at all" in Ms. Cessna's "promotion," ECF No. 37-31 at 17, however, she also noted that Ms. Cessna had worked for Defendant before Defendant hired Ms. Moore and that Ms. Cessna had previously worked in the position that Ms. Moore later took. *Id*. at 16.

Plaintiff points to unreliable and inconsistent scheduling as additional evidence giving rise to intolerable work conditions. Specifically, Plaintiff cites a single instance in which his leave request was denied, plus ongoing scheduling issues that prevented him from moonlighting at his part-time job with the Blountstown PD. The denial of vacation time, standing alone, does not give rise to an adverse employment action. *See, e.g.*, *Barnett v. Athens Reg'l Med. Center Inc.*, 550 F. App'x 711, 715–16 (11th Cir. 2013) (holding that denial of vacation request

13

failed to amount to adverse employment action under less restrictive "materially adverse" standard for retaliation claim).

Likewise, Plaintiff's testimony belies his assertion that a reasonable person would find his unreliable schedule to be an intolerable working condition. For example, Plaintiff testified that neither Plaintiff, nor his younger female coworkers, knew when they were supposed to work. ECF No. 37-27 at 22 ("Logan and Tiffany and I, we talked a lot about wishing they would give us a set schedule."). But Plaintiff has not presented evidence that other dispatchers were also forced to resign due to the unreliable schedule.

In addition, Plaintiff testified that he did not get many offers to work a day or evening shift, given his status as senior dispatcher. *Id*. at 30. However, he also testified that he *asked* for the midnight shift as a courtesy to his younger coworkers. *Id*. at 13. Plaintiff's offer to work nights coupled with his subjective feelings about not being offered a change in schedule do not give rise to objectively intolerable work conditions.

Finally, although there is some suggestion that Ms. Moore continued to earn overtime, it is undisputed that the elimination of overtime happened for all other dispatchers—male and female, young and old—and not just for Plaintiff.

A plaintiff "must produce substantial evidence that conditions were intolerable" for a constructive discharge claim to survive summary judgment. *Akins*

14

*v. Fulton Cty.*, 420 F.3d 1293, 1302 (11th Cir. 2005). Ultimately, however, "[a] resignation is voluntary as long as the plaintiff had a choice, even if the alternatives are unpleasant." *Jones v. Allstate Ins. Co.*, 707 F. App'x 641, 646 (11th Cir. 2017) (citation omitted). This is what happened here. Plaintiff had a choice. He chose to resign. His attempt to squeeze into one of the narrow exceptions for constructive discharge falls far short of the demanding threshold the law requires.

In toto, Plaintiff's evidence in support of his alleged constructive discharge is akin to the nitpicking, targeting, and frustration that has previously failed to give rise to a cognizable constructive discharge in other cases. *See e.g.*, *Milton*, 635 F. Supp. 3d at 1227–28. Viewing the facts in the light most favorable to Plaintiff, no reasonable jury can conclude Plaintiff was subject to conditions so intolerable that he was forced into an involuntary resignation.[1] Defendant's motion for summary judgment, ECF No. 26, is **GRANTED in part** as to Counts II and III. Next, this Court considers Plaintiff's whistleblower claim.

B

As to Plaintiff's whistleblower claim, on the other hand, disputed issues of material fact preclude summary judgment in Defendant's favor. First, Defendant

---

[1] In addition, Plaintiff has presented only a mere scintilla of evidence that any differential treatment was because of his age or gender. Thus, even if Plaintiff were able to demonstrate a jury question as to whether he suffered a constructive discharge, the record arguably would not permit a reasonable jury to find such action was intentionally discriminatory.

15

contends that Plaintiff has not demonstrated that he engaged in protected activity by either participating in an inquiry or investigation or submitting his complaints to Defendant in a "signed writing." ECF No. 26 at 12. But Plaintiff points to record evidence that, taken as true and viewed in the light most favorable to him, would permit a reasonable jury to find he engaged in protective activity[2] of which Defendant and Ms. Moore were aware. *See* ECF No. 38 at 11, 25–26.

Defendant also contends that no reasonable jury could find that Plaintiff suffered an adverse employment action for purposes of his whistleblower claim. ECF No. 26 at 14–15. However, Defendant recognizes that a less restrictive standard applies to demonstrate an adverse employment action in the context of Plaintiff's whistleblower claim as compared to Plaintiff's substantive discrimination claims. *Id*. And, although this Court disagrees with Plaintiff's argument that he was forced to resign as a result of engaging in protected activity, this Court concludes that Plaintiff has cited other evidence of retaliatory adverse action that would permit a reasonable jury to infer that a reasonable employee in Plaintiff's position would have been dissuaded from engaging in protected activity. *See* ECF No. 38 at 10–12, 21.

---

[2] Defendant breaks down the "protected activity" into separate issues—namely, whether Plaintiff properly disclosed any protected complaints in a "signed writing" or whether Plaintiff was requested to participate in an investigation hearing or other inquiry. *See* ECF No. 26 at 12–13. This Court concludes disputed issues of fact preclude summary judgment with respect to each of these sub-issues.

In short, Defendant's motion for summary judgment, ECF No. 26, is **DENIED in part** with respect to Count I.

IV

The only remaining claim is Plaintiff's state-law whistleblower claim. This claim was originally before this Court pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). *See also* 28 U.S.C. § 1441(a). Having dismissed the federal claims, this Court has discretion to continue to exercise jurisdiction over the state claim or remand the claim to state court. *See Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). The Eleventh Circuit has recently emphasized that, "[a]lthough the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed." *Silas*, 55 F.4th at 866. Indeed, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Id*. (quoting *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004)). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim. And

17

because this case was originally removed to federal court, the proper course of action is to remand Plaintiff's sole remaining state-law claim to state court.

Accordingly,

**IT IS ORDERED:**

1. Defendant's motion for summary judgment, ECF No. 26, is **GRANTED** as to Counts II and III.

2. The Clerk shall enter judgment stating, "Counts II and III are **DISMISSED with prejudice**."

3. Count I is **REMANDED** to the Circuit Court of the Second Judicial Circuit, in and for Liberty County, Florida. The Clerk shall take all steps necessary to effect the remand and close the file.

**SO ORDERED on September 18, 2024.**

s/Mark E. Walker  
**Chief United States District Judge**